COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Willis and Elder
Argued at Richmond, Virginia


OMAR VINCENT CRADDOCK
                                    MEMORANDUM OPINION[*] BY
v.          Record No. 1846-95-2      JUDGE LARRY G. ELDER
                                         AUGUST 6, 1996
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                     James B. Wilkinson, Judge


            Cullen D. Seltzer, Assistant Public Defender
            (David J. Johnson, Public Defender, on
            brief), for appellant.

            H. Elizabeth Shaffer, Assistant Attorney
            General (James S. Gilmore, III, Attorney
            General, on brief), for appellee.


     Omar Vincent Craddock (appellant) appeals his conviction for

first degree murder in violation of Code § 18.2-32.  Appellant

contends that the trial court erred in refusing to instruct the

jury that it should acquit him of first degree murder if it found

that he was sufficiently intoxicated to preclude premeditation

and deliberation.  We disagree and affirm appellant's conviction.

                                I.

                              FACTS

     Appellant and Cassandra Finney were involved in a four-year

relationship which ended shortly before May 19, 1995.  According

to Finney's testimony, appellant told her on May 19, 1995, that

_____
     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

he was going to "get" her, and "if he had to go back to jail it was going to be for something serious." The same day, Finney took her three children and went to stay at the apartment of her friend, Susan Haskell, who was appellant's cousin.

At approximately 6:00 a.m. on May 20, 1995, appellant kicked in the door to Haskell's apartment and said to Finney, "you don't want me no more, you took a warrant out on me." After asking Finney two questions, appellant pulled out a gun and began shooting. Haskell was struck and killed, and Finney was injured by multiple gunshot wounds.

Police arrested appellant later that morning, after Finney identified appellant as the man who shot her. Beginning at 10:00 a.m., police questioned appellant. Detective R. M. House testified that appellant stated, in his grandmother's presence, "yes, grandma, I did this." Appellant also said that he was "high all night, his mind was running a thousand miles an hour, a million miles an hour, and that [Haskell and Finney] were against him." Appellant told his grandmother, "they hurt me, grandmother, they hurt me, grandma, I was high and when I get high, grandmother, your mind be running a million miles per hour." Detective House also testified that appellant dozed off during questioning, his eyes were "kind of glazed or watered," but that the detective did not know "if he was high or sleepy or what. He didn't appear to be abnormal."

Appellant told police that after the shootings, he dropped

his gun "near a big field" as he fled the apartment complex. However, because appellant could not recall precisely where he had dropped the gun, police failed to locate the weapon.

Appellant was indicted on one count of first degree murder and other related charges. At trial on August 11, 1995, appellant testified that he had been a cocaine addict and started using heroin after midnight on May 20, 1995. Appellant testified that his personality changed when he used drugs, and he stated that heroin "slows you down. It's like a downer. Your reactions are slow." Appellant also testified that he never went to Haskell's apartment on May 20, 1995 and denied telling his grandmother that he shot the women.

Appellant requested that the trial court give the following jury instruction: "If you find that the defendant was so greatly intoxicated by the voluntary use of alcohol and/or drugs that he was incapable of deliberating or premeditating, then you cannot find him guilty of murder in the first degree." The trial court refused to give this instruction, stating that appellant presented no evidence to establish what effect, if any, the heroin had on him. The jury found appellant guilty of all charges on which he had been indicted. Appellant now appeals his conviction to this Court.

## II.

## JURY INSTRUCTION

We hold that the trial court properly denied appellant's

proffered instruction.

"A defendant is entitled to have the jury instructed only on those theories of the case that are supported by the evidence." Frye v. Commonwealth, 231 Va. 370, 388, 345 S.E.2d 267, 280 (1986). More than a scintilla of evidence must be present to support an instruction. Frye, 231 Va. at 388, 345 S.E.2d at 280. "[T]he weight of the credible evidence that will amount to more than a scintilla of evidence is a matter to be resolved on a case-by-case basis." Brandau v. Commonwealth, 16 Va. App. 408, 412, 430 S.E.2d 563, 565 (1993). This determination "is largely a factor of determining the weight of that evidence [supporting the defendant's proposition] in comparison to the weight of the other credible evidence that negates the proposition in question." Id. at 411-12, 430 S.E.2d at 565.

"When a [defendant] has become so greatly intoxicated as not to be able to deliberate and premeditate, he cannot commit murder of the first degree, or that class of murder under our statute denominated a wilful, deliberate and premeditated killing." Johnson v. Commonwealth, 135 Va. 524, 531, 115 S.E. 673, 675 (1923). "In Virginia, mere intoxication from drugs or alcohol is not sufficient to negate premeditation." Duncan v. Commonwealth, 2 Va. App. 717, 731, 347 S.E.2d 539, 547 (1986); Giarratano v. Commonwealth, 220 Va. 1064, 1073, 266 S.E.2d 94, 99 (1980). "[S]o long as [a defendant] retains the faculty of willing, deliberating and premeditating, though drunk, he is capable of

-4-

committing murder in the first degree; and if a drunk man is guilty of wilful, deliberate and premeditated killing, he is guilty of murder in the first degree." Duncan, 2 Va. App. at 731, 347 S.E.2d at 547. "The question is whether the facts indicate that the defendant was intoxicated to such an extent that he did not know what he was doing or did not know right from wrong," id., not whether appellant was merely intoxicated.

To determine whether more than a mere scintilla of evidence established appellant's intoxication to a degree to which he could not premeditate or deliberate, this Court must view the facts in the light most favorable to appellant. Brandau, 16 Va. App. at 411, 430 S.E.2d at 564-65. We hold that although appellant claimed to have consumed a substantial quantity of heroin after midnight on May 20, 1995, "the evidence was insufficient to show that he was so intoxicated as to render him incapable of committing a wilful, deliberate and premeditated act designed to kill the victims." Jenkins v. Commonwealth, 244 Va. 445, 458, 423 S.E.2d 360, 368 (1992), cert. denied, 507 U.S. 1036 (1993)(emphasis added); Hatcher v. Commonwealth, 218 Va. 811, 241 S.E.2d 756 (1978); Waye v. Commonwealth, 219 Va. 683, 251 S.E.2d 202, cert. denied, 442 U.S. 924 (1979). The issue is not merely whether a scintilla of evidence showed that appellant had consumed heroin or whether appellant was intoxicated.

Appellant points to various pieces of evidence in support of his contention. First, appellant asserts that his testimony and

the Commonwealth's evidence showed that he was so highly intoxicated due to heroin consumption that he could not premeditate or deliberate. We disagree. Appellant testified at trial that he consumed a large quantity of heroin at approximately 12:15 a.m. on May 20, 1995. Although appellant testified that heroin affected him "like a downer" or a "sleeping pill," he specifically stated in response to direct questioning that heroin did <u>not</u> make him "out of his mind." At no other point did appellant present evidence that he suffered from intoxication to such a degree that he was unable to premeditate or deliberate on May 20, 1995. While police officers testified that appellant told them that he had consumed heroin and that the drug caused his mind to "run a million miles per hour," appellant denied these statements on the stand. Indeed, appellant denied on the stand that he had been near Haskell's apartment on May 20, 1995 and denied ever committing murder that morning.

Next, appellant asserts that evidence proved that he was intoxicated when interviewed by the authorities. Detective House testified that while he questioned appellant on the morning of May 20, 1995, appellant started "to doze off," and appellant's eyes became watery. However, according to House and appellant himself, appellant was emotional during questioning, and he had been awake for many hours. Furthermore, House stated that nothing about appellant's behavior appeared to be abnormal. This evidence, even when added to the other evidence appellant wishes

us to consider, was insufficient to require an intoxication instruction.

Next, appellant asserts that because he could not recall where he had dropped his weapon, the jury could infer that he had been highly intoxicated. A careful reading of the record shows that, in fact, appellant did remember that he dropped his gun in a nearby field as he fled the apartment complex. Again, this evidence did not support appellant's theory of the case, namely, that he was too intoxicated to commit first degree murder.

As the trial court stated:

> This instruction about intoxication, I don't think the Court has any credible evidence he was intoxicated at the time. His actions were pretty irrational. He said he used some heroin that night after he got off of work. He probably used right much. . . . [Nevertheless,] I will refuse the instruction. . . . There is no evidence of what effect heroin has on him, none whatsoever.

The trial court correctly ruled in this regard. The facts, which show premeditation and deliberation, reveal that appellant threatened Finney a day before the shootings, that he armed himself with a gun, that he located her at his cousin's apartment on May 20, 1995, that he explained to Finney why he was going to shoot her, that he asked Finny two questions before shooting her, that he shot Finney and Haskell numerous times, and that he told the police that he discarded his gun in a field near the apartment complex.

Because no more than a scintilla of evidence supported a voluntary intoxication instruction, we find no error in the trial court's ruling.  For these reasons, we affirm appellant's conviction.

<u>Affirmed.</u>

Benton, J., dissenting.

Craddock proffered the following instruction which the trial judge refused to give:

> If you find that the defendant was so greatly intoxicated by the voluntary use of alcohol and/or drugs that he was incapable of deliberating or premeditating, then you cannot find him guilty of murder in the first degree.

"The overriding purpose of jury instructions is to 'inform the jury as to the law.'" Allen v. Commonwealth, 20 Va. App. 630, 639, 460 S.E.2d 248, 252 (1995) (citations omitted), rev'd on other grounds, ___ Va. ___, ___ S.E.2d ___ (1996). Premeditation is a factual question to be determined by the jury upon competent evidence. Beavers v. Commonwealth, 245 Va. 268, 281, 427 S.E.2d 411, 420, cert. denied, 114 S. Ct. 171 (1993). Furthermore, the following principle is well established in Virginia:

> There are certain grades of crime . . . which a drunk [person] may not be capable of committing. When a [person] has become so greatly intoxicated as not to be able to deliberate and premeditate, [that person] cannot commit murder of the first degree, or that class of murder under our statute denominated a wilful, deliberate and premeditated killing.

Johnson v. Commonwealth, 135 Va. 524, 531, 115 S.E. 673, 675 (1923).

"'Both the Commonwealth and the defendant are entitled to appropriate instructions to the jury of the law applicable to each version of the case, provided such instructions are based

–9–

upon the evidence adduced.'" Stewart v. Commonwealth, 10 Va.
App. 563, 570, 394 S.E.2d 509, 514 (1990) (quoting Simms v.
Commonwealth, 2 Va. App. 614, 616, 346 S.E.2d 734, 735 (1986)).
In Virginia, an instruction must be given when it is supported by
more than a scintilla of evidence. Gibson v. Commonwealth, 216
Va. 412, 417, 219 S.E.2d 845, 849 (1975), cert. denied, 425 U.S.
994 (1976). At such a low threshold, the evidence must only rise
above "a trifle." Black's Law Dictionary 1345 (6th ed. 1990).

When the question on appeal is whether the trial judge erred
in refusing a jury instruction, we must view the evidence in the
light most favorable to the appellant. Blondel v. Hays, 241 Va.
467, 469, 403 S.E.2d 340, 341 (1991). In this case, the
Commonwealth's own evidence proved that Craddock was highly
intoxicated at the time of the offense, that Craddock had been
high on drugs all night, and that his mind in that condition "was
running a million miles an hour." Moreover, the evidence proved
that Craddock could not remember where he dropped the gun or the
direction he ran from the residence. He began dozing off, while
being interrogated by the police, only a few hours after the
shootings occurred. In addition, Craddock testified that he used
a large quantity of heroin the night of the killing.

These facts are consistent with Craddock's defense that he
was greatly intoxicated the night of the killing. They provide a
sufficient evidentiary basis upon which the jury could have found
as a fact or reasonably inferred that Craddock was so intoxicated

that he lacked the ability to premeditate.

Furthermore, the majority states that whether the evidence provides more than a scintilla of evidence to support the giving of an instruction "'is largely a factor of determining the weight of that evidence [supporting the defendant's proposition] in comparison to the weight of the other credible evidence that negates the proposition in question.'"  Brandau v. Commonwealth, 16 Va. App. 408, 412, 430 S.E.2d 563, 565 (1993).  That principle is contrary to well established principles and completely negates the fact finding role of the jury.  When considering instructions for the jury, the trial judge must be mindful of the following principle:

> The jury is not required to accept, in toto, either the theory of the Commonwealth or that of an accused.  They have the right to reject that part of the evidence believed by them to be untrue and to accept that found by them to be true.  In so doing, they have broad discretion in applying the law to the facts and in fixing the degree of guilt, if any, of a person charged with a crime.

Belton v. Commonwealth, 200 Va. 5, 9, 104 S.E.2d 1, 4 (1958).

Thus, it is well-settled that even though there was other evidence in the record consistent with premeditation, the jury was not required to believe that evidence.  "Therefore, the trial [judge] must instruct on both theories to guide a jury in their deliberations as to the law applicable to the case, depending upon how the jury decides the facts."  Foster v. Commonwealth, 13 Va. App. 380, 383-84, 412 S.E.2d 198, 200 (1991).  The jury, as

-11-

fact finder, is permitted to believe or disbelieve the testimony of any witness in whole or in part.  Belton, 200 Va. at 9, 104 S.E.2d at 4.

The principle is equally well established that in order for the refusal of an instruction to be error, the appellate court need not find that the jury would have found in accordance with the denied instruction, only that it could have so found. Barrett v. Commonwealth, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986).  The balancing principle that the majority would delegate to the trial judge ignores the fundamental principle that "[i]t is immaterial that the jury might have rejected the [defense theory]; if there is evidence tending to support the [defense theory], a trial [judge] errs in refusing an instruction thereon."  Id.  When the trial judge gave the jury an instruction on second degree murder but failed to instruct the jury that intoxication may negate premeditation, the instructions clearly failed to fully inform the jury as to the applicable law.  The trial judge's failure to give the proffered instruction, therefore, deprived Craddock of the right to have the jury fully instructed on the law applicable to the evidence proved at trial.  "In Virginia, the weight of the evidence or the inferences to be drawn from circumstances, is always a matter for the jury, under proper instructions from the court."  Toler v. Commonwealth, 188 Va. 774, 781, 51 S.E.2d 210, 213 (1949).

For these reasons, I would reverse the conviction and remand

for a new trial.